[Doc. Nos. 58, 62, 63, 64]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| TAMIKA YOUNG, as parent and natural guardian of J.Y., a minor,<br><br>          Plaintiff,<br><br>     v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>          Defendants. | Civil No. 12-5215 (JEI/AMD) |

### MEMORANDUM OPINION AND ORDER

In this medical malpractice action, Defendants Cooper University Hospital, Heather Crawford, and Beverly Tew (hereinafter, "Defendants") move pursuant to Federal Rule of Civil Procedure 35 to compel Tamika Young and Bruvon Fuller, parents of minor-plaintiff J.Y. (hereinafter, "J.Y."), to submit to genetic testing. (See Motions to Compel [Doc. Nos. 58, 63].) Both parents oppose the motion and seek protective orders precluding the requested examinations. (See Motions for Protective Order [Doc. Nos. 62, 64].) Defendant United States of America takes no position on the issue. (See Transcript [Doc. No. 77], Mar. 13, 2015, 4:18-21].) For the reasons set forth herein, the Court denies the

1

motions to compel [Doc. Nos. 58, 63] and accordingly grants the motions for protective orders [Doc. Nos. 62, 64].

The present litigation is based on the purportedly negligent delivery of J.Y. by cesarean section on April 6, 2009, which allegedly resulted in J.Y. "suffer[ing] great physical pain . . . , permanent brain damage, and other injuries . . . ." (Amended Complaint [Doc. No. 30], ¶ 40.) Specifically, Plaintiff alleges that as a result of Defendants Heather Crawford, Shaurin Patel[1], and Beverly Tew's "negligent acts and/or omissions" J.Y. was not "promptly and properly" delivered after those Defendants noted signs of fetal distress. (Id. at ¶ 49.) As a result, Plaintiff alleges J.Y. was delivered in a "severely asphyxiated" state, "sustained a brain bleed," and was hospitalized for five (5) months following delivery. (See id. at ¶¶ 35, 37, 39.) Plaintiff consequently seeks monetary damages in "an amount to be determined by the Court together with the costs of this action." (See, e.g., id. at ¶ 47.)

Defendants generally assert there was no "deviation from approved standards of medical and/or nursing care[,]" and further assert J.Y.'s injuries "were caused by factors other than, and

---

[1] On March 2, 2015, the parties submitted a proposed stipulation of dismissal with respect to Defendant Shaurin Patel. (See Stipulation of Dismissal [Doc. No. 70].) By Order dated March 6, 2015, the District Court dismissed with prejudice any claims against Defendant Shaurin Patel. (See Voluntary Stipulation and Order of Dismissal with Prejudice [Doc. No. 71], Mar. 6, 2015, 1.)

2

unrelated to, the actions of the answering defendant(s), including but not limited to pre-existing medical, genetic, and/or environmental conditions, disease, or illness." (See Answer [Doc. No. 39], 3.) Defendants assert a number of legal defenses as well as crossclaims for indemnification and contribution. (See generally Answer [Doc. No. 34]; see also Answer [Doc. No. 35]; see also Answer [Doc. No. 39].)

The issue presently before the Court pertains to the Defendants' motions to compel Ms. Young and Mr. Fuller to submit to genetic testing.[2] The pending motions are based on the opinion set forth by Dr. Aubrey Milunsky, Defendants' "expert in the area of human genetics." (See Certification [Doc. No. 58-1], ¶¶ 4-5;

---

[2] In opposition to the pending motions, both parents allege the motions are untimely because they were filed approximately three (3) months after the pretrial factual discovery period concluded. (See Motions for Protective Order [Doc. Nos. 62, 64], 2-3; see also Amended Scheduling Order [Doc. No. 44], Sept. 15, 2014, 1 (setting the fact discovery end date at October 31, 2014).) Pursuant to Federal Rule of Civil Procedure 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent." "'[G]ood cause'" under Rule 16(b)(4) "'hinges on [the] diligence of the movant[.]'" Ewing v. Cumberland Cty., No. 09-5432, 2014 WL 3974159, at *4 (D.N.J. July 16, 2014) (citation omitted). Here, Defendants assert good cause exists to consider the motions to compel because they "have a compelling interest in proving their actions were not the cause of [J.Y.'s] disabilities," Ms. Young and Mr. Fuller "will only have to undergo the limited inconvenience of having blood drawn," and "the results of the test may have a profound impact on the liability and damages in this case." (Brief [Doc. No. 58-2], 2-3; see also Brief [Doc. No. 63-2], 2-3.) As the Court has denied the motion on other grounds, the Court need not address the timeliness issue.

see also Exhibit [Doc. No. 58-3] (setting forth Dr. Milunsky's expert report).) Dr. Milunsky states that "a range of genetic tests were performed" on J.Y. and a "SNP microarray" of J.Y.'s DNA revealed "a microdeletion" within a specific chromosome "resulting in the deletion of at least three genes."[3] (See Exhibit [Doc. No. 58-3], 3 on the docket.) Dr. Milunsky opines that such a deletion, "if not inherited, may well explain" J.Y.'s mental and physical injuries. (Id.) Dr. Milunsky further opines that the effect of J.Y.'s genetic abnormality "will be clarified by determining whether either of his parents harbor this deletion." (Id.) Accordingly, Defendants seek a court order compelling Ms. Young and Mr. Fuller to "have blood drawn for subsequent genetic testing[]" to determine whether they also have the genetic abnormality identified by Dr. Milunsky. (See, e.g., Certifications [Doc. Nos. 58-1, 63-1], ¶ 13.) Defendants generally contend Ms. Young and Mr. Fuller's physical conditions are in controversy and good cause exists for such an order because if Defendants "can show that the genetic deletion is the product of mutation and that the deletion is the cause of at least some of [J.Y.'s] disabilities, then Defendants['] liability for [J.Y.'s] injuries will be significantly reduced." (Id. at ¶ 11.) Defendants further describe the issue as having a "profound impact on the cause of

---

[3] Dr. Milunsky identified those genes as CCDC129, C7orf16, and PDE1C. (Exhibit [Doc. No. 58-3], 3 on the docket.)

4

[J.Y.'s] disabilities" and, consequently, on Defendants' liability.[4] (Brief [Doc. Nos. 58-2, 63-2], 2.)

In opposition, Ms. Young and Mr. Fuller[5] argue that Defendants have not demonstrated the requested physical examinations are warranted. (Motions for Protective Order [Doc. Nos. 62, 64], ¶¶ 10-11.) In addition, both parents contend they are not parties to the litigation as neither have asserted any individual claims. (See Motions for Protective Order [Doc. Nos. 62, 64], 3.)

Physical and mental examinations are governed by Federal Rule of Civil Procedure 35, which provides in pertinent part:

> The court where the action is pending may order a party whose mental or physical condition — including blood group — is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner. The court has the same authority to order a party to produce for examination a person who is in its custody or under its legal control.

---

[4] In the reply brief, Defendants assert that if the Court denies the pending motions to compel [Doc. Nos. 58, 63], Plaintiff should be "estopped" from disputing the credibility of Dr. Milunsky's expert report at trial. (See Brief in Opposition [Doc. No. 66], 4-6.) As the Court previously noted on the record, such a request should be raised in the context of a motion in limine. (See Transcript [Doc. No. 77], Mar. 13, 2015, 14:3-21.)

[5] Counsel for Ms. Young represents Ms. Young and non-party Mr. Fuller for the purposes of the pending motions. (See Transcript [Doc. No. 77], Mar. 13, 2015, 4:6-12.)

FED. R. CIV. P. 35(a)(1) (hereinafter, "Rule 35"). As further set forth in Rule 35, an order compelling a party to submit to a physical or mental examination "may be made only on motion for good cause and on notice to all parties and the person to be examined[.]" FED. R. CIV. P. 35(a)(2). Accordingly, an examination pursuant to Rule 35 may only be ordered when the condition of the person sought to be examined "is 'in controversy' and there is 'good cause' to order the examination." McLaughlin v. Atl. City, No. 05-2263, 2007 WL 1108527, at *2 (D.N.J. Apr. 10, 2007) (citation omitted).

"[G]ood cause" under Rule 35, however, requires a "greater showing of need . . . than under other discovery rules." Schlagenhauf v. Holder, 379 U.S. 104, 118 (1964). "The specific requirement of good cause would be meaningless if good cause could be sufficiently established by merely showing that the desired materials are relevant, for the relevancy standard has already been imposed by [Federal Rule of Civil Procedure] 26(b)." Id.; see also Montana v. Cty. of Cape May Bd. of Freeholders, No. 09-755, 2013 WL 5724486, at *2 (D.N.J. Oct. 18, 2013) (noting that the good cause standard "must be higher than the general relevancy standard"). A movant must "affirmative[ly]" demonstrate "that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination." Schlagenhauf, 379 U.S. at 118. The

6

movant's burden is not satisfied by "mere conclusory allegations of the pleadings — nor by mere relevance to the case[.]" Id. "Mental and physical examinations are only to be ordered upon a discriminating application by the district judge of the limitations prescribed by [] Rule [35]. To hold otherwise would mean that such examinations could be ordered routinely [and] [t]he plain language of Rule 35 precludes such an untoward result." Id. at 121-22; see also McLaughlin, No. 05-2263, 2007 WL 1108527, at *2.

In addition to the good cause standard, a party seeking a Rule 35 examination must demonstrate that the person to be examined is "a party" or "a person who is [either] in [a party's] custody or under [a party's] legal control." FED. R. CIV. P. 35(a)(1). The Court is without authority to compel a non-party to submit to an examination under Rule 35. See Cutting v. United States, No. 07-2053, 2008 WL 5064267, at *2 (D. Colo. Nov. 24, 2008) (finding "the [c]ourt must recognize its own jurisdiction, which, under persuasive authority, rejects [Rule] 35's reach to nonparties" (citing Dunford v. Rolly Marine Serv. Co., 233 F.R.D. 635, 637 (S.D. Fla. 2005); Caban ex rel. Crespo v. 600 E. 21st St. Co., 200 F.R.D. 176, 181 (E.D.N.Y. 2001))). For the reasons that follow, the Court concludes that neither parent falls within the definition of a party. Accordingly, the motions are denied on this

7

basis and the Court need not address the good cause standard for the requested genetic testing.

Defendants generally contend J.Y.'s parents are parties because they are involved in the pending litigation and are financially "interested" in its outcome. (See generally Brief in Opposition [Doc. No. 66]; see also Transcript [Doc. No. 77], Mar. 13, 2015, 6:6-24.) Specifically, Defendants assert Ms. Young "is essentially a party[]" because she is J.Y.'s representative and is currently bringing the pending litigation on J.Y.'s behalf. (Brief in Opposition [Doc. No. 66], 3.) In addition, Defendants contend Ms. Young should be considered a party based on her purported financial interest in the litigation, as any monetary judgment "would greatly ease her financial burden in providing care for [J.Y.]." (Id.) Defendants assert Mr. Fuller should be considered a party based on the same purported financial interest (Transcript [Doc. No. 77], Mar. 13, 2015, 6:22-24), because his support obligations with respect to J.Y. would be alleviated by any monetary judgment. (See Brief in Opposition [Doc. No. 66], 3.) Both parents dispute the characterization that they are parties under Rule 35, and note that neither has asserted any individual claims in the litigation. (See Motions for Protective Order [Doc. Nos. 62, 64], 6-7.)

The Court first addresses the issue with respect to Mr. Fuller. Mr. Fuller has neither asserted an individual claim nor

has a representative role in the pending litigation. Although conceding that Mr. Fuller is "not a named party (see Transcript [Doc. No. 77], Mar. 13, 2015, 6:22-23), Defendants attempt to evade Mr. Fuller's non-party status by describing him as "interested" in the litigation. (Id. at 5:17-18, 6:6-7.) However, Defendants do not proffer any specific allegations or case law in support of the assertion that an individual's interest in a litigation, no matter how attenuated, can render that individual a party for the purposes of Rule 35 or that such a person may be compelled by court order to submit to an examination. In Cutting v. United States, a case factually similar to the present case, a father brought an action on behalf of his minor son in his capacity as "next friend and parent" in which he alleged the "[d]efendants provided negligent medical care during the [son's] delivery . . . which resulted in a brain injury." No. 07-2053, 2008 WL 5064267, at *1. The defendants sought to compel, among other things, the minor son and his mother to submit to genetic testing under Rule 35(a) based on their assertion that "the [son's] injury was or could have been caused by other circumstances." Id. The court in Cutting found that the defendants had established "the relevance and importance of genetic testing on the child's mother," but denied the request. Id. Specifically, the Cutting court rejected Federal Rule of Civil Procedure 35's application to a nonparty. Id. The court also rejected any argument that it possessed the "inherent authority"

9

to order such testing and did "not believe that, under Rule 35's language, [the mother] should be considered a party." Id. The Court finds that Rule 35 does not apply to non-parties, and consequently, denies the motion to compel Mr. Fuller to submit to genetic testing.

The Court next examines whether Ms. Young falls within the definition of a party in light of the fact that she is serving a representative role under Federal Rule of Civil Procedure 17(c). (See Transcript [Doc. No. 77], Mar. 13, 2015, 6:6-24.) Rule 17(c)(1) provides that "(A) a general guardian; (B) a committee; (C) a conservator; or (D) a like fiduciary" are "representatives [who] may sue or defend on behalf of a minor[.]" FED. R. CIV. P. 17(c)(1). "An incompetent person appears by his next friend, a nominal party. The person under a disability is the real party." Crawford v. Loving, 84 F.R.D. 80, 87 (E.D. Va. 1979) (citing Morgan v. Potter, 157 U.S. 195, 198 (1895)); see also 6A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, FEDERAL PRACTICE AND PROCEDURE, § 1570, at 675-76 (3d ed. 2010) (stating "[i]n any action in which a guardian ad litem or next friend sues or defends on behalf of an infant or incompetent, the representative is a nominal party only; the action must be brought in the name of the real party in interest – the infant or incompetent").

While no party has cited any binding authority addressing whether Rule 35 is applicable to a minor-plaintiff's

10

representative or natural guardian who is bringing the action on behalf of the minor-plaintiff, a number of courts have rejected expanding Rule 35 to a parent suing on behalf of a child. In Caban ex rel. Crespo v. 600 E. 21st St. Co., the District Court in the Eastern District of New York denied the defendant's motion to compel a mother, who was bringing a negligence action "in her capacity as the natural guardian" of her daughter, to submit to a psychological examination or IQ testing. 200 F.R.D. at 177-178. The Caban court "decline[d] to expand the scope of Rule 35 to include representatives and natural guardians of infant-plaintiffs[.]" Id. at 181. The court in Caban noted "[i]n other contexts, courts have distinguished between the rights and obligation of individuals suing on their own behalf and those suing in a representative capacity[,]" and that courts "have almost uniformly held that a federal court lacks the authority under Rule 35(a) to order a parent, suing on behalf of an infant-plaintiff, to submit to an examination[.]" 200 F.R.D. at 179;[6] see also M.S. v. Cedar Bridge Military Acad., No. 08-2271, 2011 WL 1838885, at *4-5 (M.D. Pa. May 13, 2011) (denying a motion to compel a minor's parents to participate in the child's psychiatric examination because a "child's parents, while acting on his behalf, are not

---

[6] The Court in Caban also noted that the defendants failed to establish "good cause" for the psychological testing. 200 F.R.D. at 182 n.17.

11

separate parties who may be independently compelled under Rule 35[]").[7] These cases are in accord with the Supreme Court's admonition in Schlagenhauf that "Rule 35 only requires that the person to be examined be a party to the 'action,' not that he be an opposing party vis-à-vis the movant." 379 U.S. at 115.[8]

---

[7] Defendants assert M.S., No. 08-2271, 2011 WL 1838885, leaves open the possibility that in "appropriate circumstances" a court may compel a parent to submit to a physical examination regardless of their role in the litigation. (See Response in Support [Doc. No. 75], 2.) The Court rejects this argument as the court in M.S. denied a motion to compel a minor-plaintiff's parents to participate in a mental examination of their child. See M.S., No. 08-2271, 2011 WL 1838885, at *5.

[8] In Cruz v. Super. Ct., a case not cited by either party, a California state court left open the possibility that a non-party may be compelled to submit to a physical examination. 121 Cal.App.4th 646 (Cal. Ct. App. 2004). The state court in Cruz held pursuant to California Civil Procedure Code § 2032(a) – the state's analog to Rule 35 – that a minor's mother could be compelled to submit to genetic testing in a birth injury medical malpractice action. 121 Cal.App.4th at 652. The specific provision provides that "[a]ny party may obtain discovery . . . by means of a physical or mental examination of (1) a party to the action, (2) an agent of any party, or (3) a natural person in the custody or under the legal control of a party, in any action in which the mental or physical condition (including the blood group) of that party or other person is in controversy in the action." CAL. CIV. PROC. CODE § 2023.020(a). In 2004, § 2032 became § 2032.020. See CAL. CIV. PROC. CODE § 2023.020 law revision commission comments 2004 addition (stating "[s]ubdivision (a) of Section 2032.020 continues former Section 2032(a) without change"). The Cruz court concluded that because the statute applied to an "agent" of a party, the term "agent" was "sufficiently broad to include [the minor's] mother under the facts of [the] case." Id. at 652. In Cruz, the court considered the mother the minor's agent because the complaint alleged the minor's "injury resulted in part from the manner in which [the defendant] treated [the] mother during her pregnancy and [the] delivery[,]" and because the mother had "a definable economic interest in the outcome of the suit." Id. The Cruz court's holding was limited, and the court expressly stated that "[w]e do

12

The Court finds Rule 35 does not authorize a court to order representatives or natural guardians of minor-plaintiffs to submit to genetic testing. The Court further rejects Defendants' attempt to characterize Ms. Young as a party based on her purported "financial interest" in the litigation. Ms. Young's purported interest in obtaining a monetary judgment for her child does not render her within the scope of Rule 35. The Court consequently denies Defendants' motion to compel Ms. Young to submit to genetic testing and grants Plaintiff's motion for a protective order.

Alternatively, Defendants allege the Court should, in its discretion and in light of the "magnitude of damages" asserted by Plaintiff, "reexamine the application of [Rule] 35 as it pertains to minimally invasive testing of parents of a minor plaintiff who clearly have a vested interest in the outcome of the

---

not hold that a parent is always to be treated as a child's agent for discovery purposes." Id. Cruz is not binding authority and the Court is unpersuaded by Cruz. First, the Court rejects the argument that a parent's alleged financial interest in obtaining monetary relief for injuries sustained by a minor constitutes an interest sufficient to compel an examination of the parent under Rule 35. Second, it was the factual circumstances in Cruz, specifically the mother's medical treatment by defendant during her pregnancy and not the mother's status as guardian ad litem, on which the Cruz court based its conclusion that the mother was the minor's agent for purposes of being compelled to submit to medical testing. Third, the scope of the applicable California code is significantly broader than the scope of Rule 35 and expressly authorizes a court to compel a party's "agent" to submit to medical testing under certain circumstances. Rule 35 includes no such authorization. Compare CAL. CIV. PROC. CODE § 2023.020(a), with FED. R. CIV. P. 35.

case." (Response in Support [Doc. No. 75], 2 on the docket.) In essence, Defendants request this Court conduct a proportionality analysis to determine whether a motion to compel a medical examination of parents – in this case a blood test - pursuant to Rule 35 should be granted. However, such a proportionality analysis is counter to the express language of Rule 35. See, e.g., Caban ex rel. Crespo, 200 F.R.D. at 181 ("declin[ing] to expand the scope of Rule 35 to include representatives and natural guardians of infant-plaintiffs[]"). The Court declines to expand the scope of Rule 35. The Court does not possess the inherent authority "to order a non-party to submit to a physical or psychological exam." 200 F.R.D. at 180.

Having determined that Rule 35 does not provide for examination of Ms. Young and Mr. Fuller to submit to genetic testing, the Court finds good cause to grant Plaintiff's motions for protective orders [Doc. Nos. 62, 64] under Federal Rule of Civil Procedure 26. Federal Rule of Civil Procedure 26(c) expressly permits the Court to issue, for good cause, an order "forbidding [certain] disclosure or discovery." FED. R. CIV. P. 26(c)(1)(A). Here, the requested discovery is not permitted and therefore the Court finds protective orders are warranted. See, e.g., Ruiz-Bueno v. Scott, No. 12-0809, 2013 WL 6122399, at *2 (S.D. Ohio Nov. 21, 2013) (noting "[s]ome types of protective orders may be granted on grounds that information being sought by an opposing party is

14

simply not discoverable"). Consequently, for the reasons set forth herein, and for good cause shown,

IT IS on this 30th day of September 2015,

**ORDERED** that Defendants' motion to compel Tamika Young to submit to genetic testing pursuant to Federal Rule of Civil Procedure 35 [Doc. No. 58] shall be, and is hereby, **DENIED**; and it is further

**ORDERED** that Defendants' motion to compel Bruvon Fuller to submit to genetic testing pursuant to Federal Rule of Civil Procedure 35 [Doc. No. 63] shall be, and is hereby, **DENIED**; and it is further

**ORDERED** that Plaintiff's motion for a protective order precluding any genetic testing of Tamika Young [Doc. No. 62] shall be, and is hereby, **GRANTED**; and it is further

**ORDERED** that Plaintiff's motion for a protective order precluding any genetic testing of Bruvon Fuller [Doc. No. 64] shall be, and is hereby, **GRANTED**.

                                              s/ Ann Marie Donio
                                              ANN MARIE DONIO
                                              UNITED STATES MAGISTRATE JUDGE

cc: Hon. Joseph E. Irenas